UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-04875-KK-PDx** | Date: | September 2, 2026 |
| Title: | ***Vladimir M. Troykalo v. Cynthia Armant, et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order GRANTING Petitioner's Motion for a Preliminary Injunction [Dkt. 2]**

## I. INTRODUCTION

On August 25, 2026, petitioner Vladimir M. Troykalo ("Petitioner"), who is currently detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"), filed a verified Petition for Writ of Habeas Corpus ("Petition") against respondents Cynthia Armant, Ernesto Santacruz, Todd Lyons, Markwayne Mullin, and Todd Blanche (collectively, "Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed an Ex Parte Motion for Temporary Restraining Order, which the Court converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 2, Motion ("Mot."); Dkt. 6.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II. BACKGROUND

### A. RELEVANT FACTS

As alleged in the verified Petition, Petitioner is a 66-year-old citizen of Russia. Pet. ¶¶ 1, 8. On July 17, 2016, Petitioner was lawfully admitted into the United States on a B-2 visa, which expired on January 16, 2017. Id. ¶ 13; id. at 34. After the expiration of his B-2 visa, Petitioner filed

an application for asylum and withholding of removal on July 13, 2017. Id. ¶ 13. Plaintiff subsequently submitted his biometrics data to the government and was granted employment authorization in 2018. Id.

Thereafter, for nearly nine years, Petitioner "resided at a known address," "complied with every government directive," and maintained no criminal record pending the adjudication of his asylum application. Id. ¶¶ 13-14. Throughout this time, the government never sought to detain Petitioner. Id. ¶ 13.

On February 5, 2026, ICE received a referral from U.S. Citizenship and Immigration Services ("USCIS") identifying Petitioner as a "nonimmigrant overstay" and an individual allegedly charged with "extremely large scale fraud" by the Russian government relating to a university in Dubai where he previously taught. Id. at 40-41. Specifically, ICE received translated copies of decrees issued by the Russian government in 2014 and 2016 purportedly charging Petitioner with "misappropriation of another's property by means of deceit committed on an especially large scale" and ordering Petitioner's detention. Id. at 42-59.

Sometime thereafter, USCIS scheduled Petitioner's asylum interview for June 29, 2026. Id. ¶ 14. On that day, Petitioner appeared for his interview as instructed. Id. At the conclusion of the interview, ICE arrested Petitioner and served him with a Notice to Appear charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States past his authorized period of admission. Id. Petitioner has been detained in immigration custody at the Adelanto ICE Processing Center since then. Id. ¶ 2.

Petitioner was scheduled for a bond hearing before an immigration judge on August 12, 2026. At 10:41 p.m. the night before the hearing, the government served Petitioner a 40-page evidentiary packet containing the translated documents from the Russian government purportedly charging Petitioner with fraud. Id. ¶ 16. During the hearing, Petitioner's counsel raised fairness and reliability objections to these materials because they were served the night before the hearing and were not properly authenticated. Id. ¶¶ 17-18. The immigration judge, however, overruled these objections and denied bond, finding Petitioner was a danger to the community and flight risk in light of, among other things, the alleged fraud charges, his "extensive foreign travel," and his "unexplained income." Id. ¶¶ 19-20; id. at 29-31.

## B. PROCEDURAL HISTORY

On August 25, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

**Ground One:** Fifth Amendment: Detention Without Pre-Deprivation Process;

**Ground Two:** Fifth Amendment: Burden and Standard of Proof at the Bond Hearing;

**Ground Three:** Fifth Amendment: Ability to Pay and Alternatives to Detention;

**Ground Four:** Fifth Amendment: Detention Based on Unauthenticated, Unreliable Foreign Accusations Served the Night Before the Hearing; and

**Ground Five:** Application of Legally Inapplicable Standards; Violation of 8 U.S.C. § 1226(a).

Id. ¶¶ 21-31. Petitioner seeks an order (1) requiring his immediate release from immigration custody or, in the alternative, a bond hearing at which the government bears the burden of justifying his detention by clear and convincing evidence, and (2) enjoining Respondents from re-detaining him without advance notice and a pre-detention hearing. Id. at 25-26.

On the same day, Petitioner filed an Ex Parte Motion for Temporary Restraining Order, seeking an order requiring his immediate release on his own recognizance and enjoining his re-detention absent pre-deprivation notice and a hearing. Mot. at 10-11. The next day, the Court converted the Ex Parte Motion for Temporary Restraining Order to the instant Motion and set an expedited briefing schedule. Dkt. 6.

On August 31, 2026, Respondents filed an Opposition, arguing Petitioner failed to exhaust administrative remedies, cannot challenge the merits of the immigration judge's bond order before this Court, and is entitled only to a prolonged detention bond hearing after six months of detention pursuant to Rodriguez v. Robbins, 715 F.3d 1127 (9th Cir. 2013). Dkt. 8, Opposition ("Opp.") at 3-7. Respondents do not otherwise challenge the merits of Petitioner's grounds for relief. See id.

On the same day, Petitioner filed a Reply. Dkt. 9, Reply.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," so long as the other Winter factors are also met. Id. at 1132.

///

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

### A. THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, Petitioner is likely to succeed on the merits of his claim that his detention without advance notice and a pre-deprivation hearing violated his right to procedural due process.[1]

#### 1. Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)). To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

#### 2. Analysis

As an initial matter, the Court finds exhaustion of administrative remedies is not warranted. "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'"

[1] Because the Court finds Petitioner is entitled to relief based on this claim, the Court declines to consider Petitioner's other claims.

Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). However, a court may waive the exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted).

Here, administrative remedies would be "inadequate and futile," as a post-deprivation bond hearing "would not address the propriety of Petitioner's claim that he was not afforded constitutionally adequate procedural safeguards prior to the deprivation of his liberty interest." R.N.G. v. Semaia, No. EDCV 26-2839-DSR, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026). Additionally, Petitioner would "suffer significant irreparable harm" in the form of continued detention "if forced to wait for an administrative appeal to be decided." Villa v. Mullin, No. EDCV 26-01690-JDE, 2026 WL 1583941, at *4 (C.D. Cal. June 2, 2026). For the same reason, the alternative remedy of a post-deprivation bond hearing is also inadequate to redress Petitioner's due process challenge to his detention without adequate notice and a pre-deprivation hearing. See Gudavasov v. Marin, No. EDCV 26-00541-AH-MBKx, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding "a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing"). Accordingly, the Court exercises its discretion to waive the prudential exhaustion requirement for Petitioner.

Further, turning to the merits, the Court finds Petitioner is likely to succeed on the merits of his claim that his detention without notice and a pre-deprivation hearing violated his right to procedural due process under the Mathews test.

First, Petitioner has a substantial private interest in remaining out of immigration custody. After Petitioner lawfully entered the United States in 2016 and filed his asylum application in 2017, Respondents "made a decision not to detain [him]" during the pendency of his application. Kharitonova v. Albarran, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026). Hence, for nearly nine years, Respondents, with "full knowledge of Petitioner's identity, immigration status[,] and location during the pendency of [his] immigration application[] . . . continuously elected not to detain [him] while exercising authority over [his] legal proceedings." Zhou v. Janecka, No. EDCV 26-04167-DTB, 2026 WL 2365550, at *5 (C.D. Cal. Aug. 14, 2026). This decision to allow Petitioner to live freely in the community gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

Additionally, while Respondents' decision not to detain Petitioner was discretionary, see 8 U.S.C. § 1226(a), that decision nonetheless created a protected interest in remaining at liberty while the government processed his asylum application. Zhou, 2026 WL 2365550, at *4 (collecting cases finding a protectable interest where the government decided "not to detain [a petitioner] or otherwise impede [their] liberty while exercising authority over [them] for purposes of adjudicating [their] applications for immigration relief"); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause."). Indeed, Respondents "deliberate[ly] acquiesce[d]" to Petitioner's continued freedom by, among other things, affirmatively granting him employment authorization while his application was pending. Abdeltawab v. Armant, No. EDCV 26-01520-MWF-DTBx, 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026); see Pet. ¶ 13. Petitioner relied on this liberty interest to live freely and "form the [] enduring attachments of normal life." Morrissey, 408 U.S. at

482. The length of Petitioner's freedom pending the adjudication of his asylum application thus only strengthens his interest in his continued freedom from immigration detention. See Doe, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Accordingly, Petitioner establishes a significant private interest.

Second, the risk of erroneous deprivation is high without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). As noted, the government permitted Petitioner to remain at liberty for nearly nine years after he filed his asylum application and his visa expired. See Pet. ¶¶ 13-14; id. at 34. During this time, the government granted Petitioner employment authorization, and Petitioner "complied with every government directive," including submitting his biometric data and appearing for his asylum interview. Id. ¶¶ 2, 13. Additionally, Petitioner maintained a clear criminal record. Id. ¶ 14. Moreover, while the government alleged in Petitioner's bond hearing that he had been previously charged with fraud by the Russian government, id. ¶¶ 18, 19, it is undisputed ICE was aware of this allegation since at least February 5, 2026, over four months before arresting him, id. ¶ 14. Therefore, to the extent this fraud allegation formed the basis for Petitioner's detention, Respondents' "lack of urgency" in acting on this information suggests they "did not consider it high priority" or "fear he would flee or refuse to comply" in the interim. Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (finding no urgency warranting immediate arrest existed where the government "waited over six weeks from the incident at issue to try to arrest" the petitioner). The evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). Where, as here, a petitioner "has not received a hearing or other process prior to the revocation of her liberty, 'the risk of an erroneous deprivation of liberty is high.'" Zhou, 2026 WL 2365550, at *6 (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)). In contrast, without the procedural safeguard of a pre-detention hearing, Respondents could unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents' interest in detaining Petitioner and the burden of a pre-detention hearing are both minimal. In their Opposition, the only justification Respondents offer for

Petitioner's detention is his visa overstay. See Opp. at 2. However, it is again undisputed Respondents were aware of Petitioner's overstay since 2017, when his visa expired and his asylum application was filed. Pet. ¶ 13; id. at 34. Respondents do not identify any material change in circumstances since then justifying Petitioner's detention.[2] See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). In any event, the fact the government "may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Therefore, Respondents have minimal interest in detaining Petitioner without a pre-detention hearing. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Finally, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324. Additionally, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Indeed, Respondents' delay in arresting Petitioner nine years after his visa expired only confirms "a pre-deprivation hearing was entirely feasible and required." Galeano-Ariza v. Warden, No. EDCV 26-4081-HDV-BFMx, 2026 WL 2491404, at *4 (C.D. Cal. Aug. 24, 2026). Hence, the government's interest in detaining Petitioner without a pre-detention hearing is low.

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his detention without notice and a pre-deprivation hearing violated his right to procedural due process. Accordingly, the first Winter factor weighs in favor of Petitioner.

## B. THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez, 872 F.3d at 994 (citation modified) (quoting Melendres, 695 F.3d at 1002). If a plaintiff establishes a likelihood of success on a claim alleging a constitutional violation, "that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023). Further, "[d]eprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

[2] Respondents notably do not cite Petitioner's alleged fraud charge as a reason for his current detention. See generally Opp. Regardless, as noted above, ICE waited over four months after learning of this allegation to arrest and detain Petitioner, indicating it "had not identified an urgent need to detain Petitioner before a pre-deprivation bond hearing could be held." G.R.R. v. Hermosillo, No. 2:26-cv-00097-GJL, 2026 WL 395268, at *5 (W.D. Wash. Feb. 12, 2026) (finding the government "lacked a sense of urgency" warranting immediate rearrest where it waited over a month to detain the petitioner based on a purported INTERPOL Red Notice).

Here, Petitioner's detention without notice or a pre-deprivation hearing violated his right to procedural due process. Hence, Petitioner will be irreparably harmed absent relief from this Court. See, e.g., Guillermo M. R., 791 F. Supp. 3d at 1037 (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

### C. BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the Immigration and Nationality Act).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. In addition, Respondents do not assert any convincing governmental interest in detaining Petitioner as part of their law enforcement obligations. See generally Opp. Even so, such arguments would not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

* * *

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to injunctive relief in the form of his immediate release. Petitioner's release is necessary to maintain the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, the last uncontested status is Petitioner's continued freedom from immigration custody pending the resolution of his asylum application. See J.A.E.M., 812 F. Supp. 3d at 1072 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025))). Accordingly, Petitioner's immediate release is the appropriate form of relief. See Pablo Sequen v. Albarran, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest

bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Motion is **GRANTED**;[3]
2. Respondents are **ORDERED TO IMMEDIATELY RELEASE** Petitioner Vladimir M. Troykalo (A# 216-007-248) from their custody;
3. Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4. Respondents are **ENJOINED** from re-detaining Petitioner pursuant to 8 U.S.C. § 1226(a) without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
5. Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case;
6. Respondents are **ORDERED** to file a status report **no later than three (3) days from the date of this Order**, regarding their compliance with this Order; and
7. The parties shall file a stipulated order and judgment granting the Petition on the same grounds and under the same terms as this Order, with all appellate rights reserved. If for any reason the parties cannot comply with this instruction, the parties shall file a joint status report no later than seven (7) days from the date of this Order explaining why.

///

///

///

[3] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

This Order shall remain in effect until further order by the Court. Failure to comply with this Order will result in sanctions.

Pursuant to General Order No. 05-07, further proceedings on the merits of the Petition are referred to the Magistrate Judge. Any objections to a Report and Recommendation issued by the Magistrate Judge shall be filed no later than three (3) days from the date of the Report and Recommendation.

**IT IS SO ORDERED**.